**In re WESTERN MANAGEMENT, INC., Debtor.**

**Bankruptcy No. 3–79–02432.**

United States Bankruptcy Court, W. D. Kentucky.

Aug. 1, 1980.

John W. Ames, Louisville, Ky., for debtor in possession.

David T. Stosberg, Louisville, Ky., for Combs, Inc., creditor.

John P. Sandidge, Louisville, Ky., for Citizens Fidelity Bank and Trust Co.

### MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This case came on for hearing on July 14, 1980, after notice, for confirmation of a

plan of reorganization submitted by Western Management, Inc., d/b/a Windmill Restaurants, debtor–in–possession (DIP and/or Western) on June 25, 1980. The Court, at the conclusion of the hearing and after considering the plan and addendum thereto, written and oral objections by creditors, and the pertinent statutory authorities, denied confirmation pursuant to 11 U.S.C. § 1129(a)(1). The Court, after having considered the full record and being otherwise sufficiently advised, hereby enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. That on November 2, 1979, Western commenced a voluntary case under Chapter 11 of Title 11, by filing its petition for reorganization.

2. That Western is a non–public Kentucky corporation with its principal place of business located at 951 South Floyd Street, Louisville, Kentucky (business location on the date of the order for relief).

3. That Joseph A. Boone is President of Western.

4. That the filing of a voluntary petition with this Court was authorized by Western's Board of Directors on November 1, 1979.

5. That on November 2, 1979, Western had total debts of $1,181,244.78, and total assets of $688,200.76.

6. That on November 16, 1979, a committee composed of Western's seven largest unsecured creditors was appointed by order of this Court and consisted of the following creditors:

Tommy Borders
Chris–Jen–Tina Corporation
Stock Yards Bank and Trust Company
Citizens Fidelity Bank
First National Bank of Georgetown
Citizens Bank of Morehead
Continental Bank of Kentucky

7. That a meeting of creditors pursuant to 11 U.S.C. § 341 was held December 7, 1979, as directed by this Court's order of November 16, 1979.

8. That on January 14, 1980, a Disclosure Statement was filed with this Court.

9. That the Disclosure Statement included the following relevant information:

(a)

| | Sales | Profit |
|---|---|---|
| 1973 | 429,035.00 | 35,939.00 |
| 1974 | 1,080,800.00 | 56,659.00 |
| 1975 | 2,526,763.00 | −13,280.00 |
| 1976 | 2,093,824.00 | −153,198.00 |

(b) That the debtor began operations in 1972 as a franchisee of Western Pancake House.

(c) That this franchise arrangement was terminated in 1975 in settlement of litigation between the franchisor and the franchisee.

(d) That in settlement of the litigation, Western was required to pay $100,000.00 to Western Pancake House. From that date forward, Western conducted business as Windmill Restaurants.

(e) That Western closed four of its restaurant operations in 1978 and two in 1979.

(f) That on November 2, 1979, Western had six operations open at the following locations:

Morehead, Kentucky
Danville, Kentucky
Georgetown, Kentucky
Louisville, Kentucky (2)
Pikeville, Kentucky (management contract)

(g) That total sales and profits were projected as follows:

| Sales | $1,192,500.00 |
|---|---|
| Profits | 47,947.00 |

(h) That Western proposed to liquidate its property at 951–953 South Floyd Street.

(i) That it would operate at only two locations in Louisville, Kentucky; on Broadway and Fern Valley Road.

10. That by order entered January 23, 1980, the committee of unsecured creditors as appointed on November 16, 1979, was amended, and the following creditors were appointed:

Tommy Borders

Federal Sign Company
Consumer Choice Coffee
Citizens Fidelity Bank & Trust Company
Reecer & Stearman, Inc.
Fred Schieber
Blacktop Maintenance Company

11. That on February 15, 1980, Western was permitted, after notice and hearing, to terminate an executory contract between Western and South Central Food Service, Inc., and the Disclosure Statement was approved.

12. That on March 11, 1980, after notice and hearing, Western was permitted to incur debt in the amount of Thirty–Thousand Dollars ($30,000.00) with Stock Yards Bank and Trust Company, and to negotiate the sale of certain assets, specifically 951–953 South Floyd Street property and inventory located in Horse Cave, Kentucky.

13. That on March 18, 1980, Western filed with the Court financial information which revealed in summary the following:

(a) Sales and profits, April 1, 1979, through February 28, 1980, for Broadway and Fern Valley Road locations in Louisville, Kentucky, and Pikeville, Kentucky, were:

| | |
|---|---|
| Sales | $1,031,241.00 |
| Profits | 4,296.00 |

(b) Sales and profits, April 1, 1979, through December 31, 1979, for Morehead, Danville and Georgetown, Kentucky, locations were:

| | |
|---|---|
| Sales | $532,189.00 |
| Profits | 4,387.00 |

(c) Sales and profits, January and February, 1980, Broadway and Fern Valley Road locations, Louisville, Kentucky, and Pikeville, Kentucky, were:

| | |
|---|---|
| Sales | $160,511.00 |
| Profits | 22,202.00 |

14. That on March 26, 1980, by order of this Court, Tommy Borders Restaurant Service, Inc., was appointed to the unsecured creditors' committee.

15. That on May 19, 1980, after notice and hearing, an order was entered permitting Western to settle litigation with the National Labor Relations Board, and to settle litigation in Adversary Proceeding No. 3–80–0025 between Windmill Restaurant of Pikeville, Inc., and Western.

16. That by order of April 7, 1980, Western was authorized to employ Stewart Auction Company, Louisville, Kentucky, to auction certain inventory and equipment.

17. That on March 31, 1980, Western filed an amended supplement to the financial report of March 18, 1980.

18. That the plan for reorganization of Western was filed with the Court on June 25, 1980, and an addendum was filed on July 14, 1980.

19. That a confirmation hearing was held on July 14, 1980, and confirmation of the plan was denied by this Court.

20. That the creditors' committee has not reported to the Court.

21. That twenty–two (22) Class III creditors with total claims of $969,057.92 accepted the plan.

22. That four (4) Class III creditors with total claims of $49,260.69 rejected the plan.

23. That twelve (12) Class II creditors accepted the plan.

## CONCLUSIONS OF LAW

1. That Western is eligible for relief under Chapter 11, 11 U.S.C. §§ 101(30) and (8), 109, 103.

2. That Western was authorized to commence a voluntary case under Chapter 11. *Price v. Gurney*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945). KRS 271A.175, 271A.420.

3. That the creditors' committee is to meet as soon as is practicable after its appointment. 11 U.S.C. § 1103(d).

4. That the creditors' committee, pursuant to 11 U.S.C. § 1103(c), may perform the following duties:

(a) Select and authorize the employment of professional persons to represent and perform services for such committee.

(b) Consult with the debtor–in–possession.

(c) Investigate the financial condition and operation of the debtor's business and desirability of continuance of such business.

(d) Participate in the formulation of a plan.

(e) Request appointment of a trustee or an examiner.

5. That a creditors' committee may file a plan when "the debtor has not filed a plan 120 days after the date of the order for relief ...." 11 U.S.C. § 1121(c)(2).

6. That the debtor may file a plan with a petition commencing a voluntary case or at any time during the pendency of the case. 11 U.S.C. § 1121(a).

7. That 11 U.S.C. § 1123(a) requires that a plan:

(1) Designate classes of claims and interests, excluding therefrom claims for costs of administration and priority tax claims;

(2) Specify any class that is not impaired under the plan.

(3) Specify the treatment of any class that is impaired under the plan.

(4) Provide the same treatment for claims within a particular class, unless the holder of the claim or interest agrees to a less favorable treatment;

(5) Provide adequate means for execution of the plan;

(6) Provide for the amendment of a corporate charter to include a provision prohibiting the issuance of nonvoting equity securities;

(7) Include a provision consistent with the interests of creditors and equity security holders and with public policy, setting forth the methods of selecting management of the reorganized corporation.

8. That under 11 U.S.C. § 1123(b) a plan may:

(1) Impair or leave unimpaired any class of claims, secured or unsecured;

(2) Subject to § 365, provide for the assumption or rejection of an executory contract or unexpired lease of the debtor.

(3) Provide for settlement of any claim or interest belonging to the debtor or to the estate.

(4) Provide for the sale of all or substantially all of the property of the estate with distribution of the proceeds among holders of claims or interests.

9. That § 1125(b) prohibits the solicitation of acceptances or rejections of the proposed plan after the commencement of the case unless a written disclosure statement is transmitted to creditors.

10. That 11 U.S.C. § 1125(a)(1) defines "adequate information" to mean information that would enable a hypothetical reasonable investor typical of holders of claims or interests involved in the particular case to make an informed judgment about the plan.

11. That 11 U.S.C. § 1125(a)(2) defines a "typical investor" and permits different disclosures to different classes of claims or interests.

12. That a holder of a claim or interest allowed under § 502 may accept or reject a plan. 11 U.S.C. § 1126(a).

13. That a class that is not impaired under the plan is deemed to have accepted the plan. 11 U.S.C. § 1126(f).

14. That a class is deemed to have rejected the plan if it is to receive nothing under the provisions of the plan. 11 U.S.C. § 1126(g).

15. That a class of claims has accepted a plan if it has been accepted by creditors that hold at least two–thirds (⅔) in amount and more than one–half (½) in number of the allowed claims of such class that has voted. 11 U.S.C. § 1126(c).

16. That on request of a party in interest, after notice and hearing, the court may disqualify a vote that was not in good faith, or that was not solicited or procured in good faith, or in accordance with the provisions of the Code. 11 U.S.C. § 1126(e).

17. That, after notice, the court is required to hold a hearing on confirmation. 11 U.S.C. § 1128(a).

18. That a party in interest may object to confirmation. 11 U.S.C. § 1128(b).

19. That objections to confirmation shall be filed at least ten (10) days before the confirmation hearing. Rule 10–307, R.B.P.; see Rule 914, R.B.P.

20. That the Court shall hold a hearing on confirmation of a plan on at least 20 days' notice to the debtor, creditors, and other parties in interest, Rule 2002 Interim Rules Bankr.Proc., Rule 10–307(a)(2), R.B.P.; see Rule 10–209(b), R.B.P.

21. That the proponent of a plan may modify a plan at any time prior to confirmation. 11 U.S.C. § 1127(a); see Rules 10–301 and 11–39, R.B.P.

22. That pursuant to 11 U.S.C. § 1129(a), the court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this chapter (subsumes all of the substantive provisions of Chapter 11). 5 *Collier on Bankruptcy*, ¶ 1129.02[1] (15th Ed., 1979); and see 11 U.S.C. §§ 1122, 1123, and 1125.

(2) The proponent has complied with the applicable provisions of Chapter 11, specifically 11 U.S.C. § 1125.

(3) The plan must have been proposed in good faith and must comply with bankruptcy law as well as nonbankruptcy law. See Section 203, Bankr. Act and Rule 10–305(d), R.B.P.

(4) There must be full disclosure of all payments or promises of payments for services, costs and expenses in connection with the case. See 11 U.S.C. § 507(a)(1), and Section 221(4), Bankr. Act.

(5) The identity of any insider that will be employed or retained by the reorganized debtor and any compensation to an insider has been disclosed. See Section 221(5), Bankr. Act, and 5 *Collier on Bankruptcy*, ¶ 1129.02[a] (15th Ed., 1979).

(6) The holders of claims of a class which has not accepted the plan must receive at least as much as they would receive in a Chapter 7 liquidation.

See Section 366(2), Bankr. Act, and *Technical Color & Chem. Wks. v. Two Guys from Massapequa*, 327 F.2d 737 (2nd Cir., 1963), and *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55 (8th Cir., 1967).

(7) Each class has either accepted the plan or is unimpaired.

(8) Provisions for priority claims of the kind specified in § 507(a)(1) through (5), payment in full as of the effective date of the plan, and payment of § 507(a)(6) priority claims to be paid on a deferred period.

(9) At least one class of claims has affirmatively accepted the plan.

(10) Confirmation will not be followed by liquidation or require further reorganization unless reorganization or liquidation is proposed in the plan.

## MEMORANDUM AND ORDER

The Court, in denying confirmation of the June 25, 1980, plan of reorganization and the modification thereto (Addendum, July 14, 1980) finds that the following statutory provisions and rules were not complied with: 11 U.S.C. §§ 1122(b); 1125(a); 1129(a)(4), (5), (7) and (11); and Rules 10–209 and 10–307 (see Rule 2002, Interim Rules Bankr.Proc. effective August 1, 1980, W.D.Ky.).

■ The greatest deficiency in this case is the lack of information available to the Court and the debtor's creditors concerning Western's financial progress since the institution of these proceedings. The only information available is the disclosure statement of January 14, 1980, and two subsequent financial reports of March 18 and 31. Western has failed to comply with the Court order directing that financial reports be filed every thirty (30) days. The Bankruptcy Code imposes upon the Court a duty to specifically determine that the creditors will receive more under a plan of reorganization than they would under liquidation, and that the plan will not likely be followed by liquidation or the need for fur-

ther reorganization. It is clear that the record does not contain the competent, concrete and reliable evidence necessary to reach the requisite conclusions.

Further, there is no indication in the record that the unsecured creditors' committee has met, investigated, monitored or in any other manner attempted to fulfill its statutory responsibility. It was envisioned by the drafters, when they removed the bankruptcy judge as overseer of a Chapter 11 case, that the committee would fill the void. Without the recommendations and findings of the creditors' committee, the Court, in ruling on a plan of reorganization, is confronted with a difficult, if not impossible, task in fulfilling its statutorily prescribed duties. It is vitally important that the Court be fully and accurately informed by independent reliable evidence. Neither the Court nor the creditors should be required to rely entirely on the evidence produced by the proponents of the plan.

It is the conclusion of the Court that it lacks the necessary information to sustain a finding that the proposed plan satisfies the requirements of Chapter 11.

The proposed modification of the plan on July 14, 1980, the date set for the hearing on confirmation, does not correct the original plan's deficiency. In fact, the Addendum further confirms and supports a finding that the creditors could not make an intelligent and informed decision when either accepting or rejecting the plan.

One preliminary condition to confirmation is that the plan be accepted by two–thirds (⅔) in majority, and one–half (½) in amount of these creditors of a class casting votes. It is another condition that the plan be found to be in the best interests of the creditors. The fifteenth edition of *Collier on Bankruptcy* noted:

"The former condition is not a substitute for the latter. Acceptances may be given because of friendship or other reasons unconnected with the problem of whether the plan is for the best interests of creditors. The court must protect the interests of the minority which has not accepted, however small." At ¶ 1129.02[a].

For the foregoing reasons, and the Court being sufficiently advised,

IT IS ORDERED AND ADJUDGED that the confirmation of the plan of June 25, 1980, be and is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the creditors' committee be and is directed to submit its report within sixty (60) days.

IT IS FINALLY ORDERED AND ADJUDGED that this case be and is continued generally.

A copy of this order is mailed to the debtor; to the attorney for the debtor; to John Sandidge; to David T. Stosberg; and to the Creditors' Committee.