**In re DIVERSIFIED CAPITAL CORPORATION, Debtor.**

**Bankruptcy No. LA 82–20651–SB.**

United States Bankruptcy Court,
C.D. California.

July 14, 1988.

Douglas D. Kappler of Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for debtor.

Marcia Pine of Rogers & Wells, Los Angeles, Cal., for the moving parties.

## OPINION RE APPOINTMENT OF COMMITTEE OF SECURED CREDITORS

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This motion raises the issue of whether the Court has the power to appoint a committee of creditors after the confirmation of a Chapter 11 plan. A motion to appoint a committee of secured creditors is brought by secured creditors American Security Bank as Trustee for the International Brotherhood of Painters & Allied Trades and the Culinary Workers Local 206 Officers, Business Agents, & Employees Severance Annuity Pay Plan ("the unions").

The Court holds that a committee of creditors, including a committee of secured creditors, may be appointed after the confirmation of a Chapter 11 plan, but before the plan is consummated.

### II. FACTS

Diversified Capital Corporation ("Diversified") filed this bankruptcy case on November 26, 1982. Its Chapter 11 plan was confirmed on March 31, 1986.

The principal business of Diversified was the ownership and development of Nellis Industrial Park, an area of land totalling approximately one half of a square mile (330 acres) in North Las Vegas, Nevada ("the Nellis property")[1]. The confirmed plan provided for Diversified to attempt to sell or to refinance the property for a period of one year after confirmation in order to pay its creditors. If Diversified was unsuccessful in refinancing or marketing the property in the first year, the plan provided that the land was to be sold at auction. In addition, the plan specifically provided for the debtor to employ Mario Piatelli as auctioneer in the event that the property was to be sold at auction.

There are six secured creditors in this case, whose claims are secured by all or part of the Nellis property or who have judgment liens against the property. Valley Bank of Nevada has a secured claim in the amount of approximately $2,000,000. The two unions have secured claims totalling approximately $500,000. The Federal Deposit Insurance Company ("FDIC") has a secured claim of approximately $800,000. The City of North Las Vegas has a secured claim in the amount of approximately $3,200,000. Piatelli has a secured claim for his $100,000 in auction expenses, pursuant to order of this Court. There are apparently only two general unsecured creditors, and they have not played any major role in the conduct of this case.

In December, 1986 Diversified contracted to sell the Nellis property to TTI Enterprises, Inc. ("TTI"), apparently in violation of the confirmed plan, for a total of $55,497,089. One-half of the purchase price was to be paid in cash upon sale of a debenture offering by TTI, and the remainder was to be paid in debentures. The contract provided for an escrow to be opened, and for the cash and securities of TTI to be paid at the closing of escrow. However, no escrow was ever opened, no cash was ever paid to Diversified, and the debentures were never issued. The debtor claims that it was "tricked" into delivering deeds for the Nellis property to TTI, so that TTI could provide a certified financial statement which included the Nellis property to Price Waterhouse in connection with the issuance of the TTI debentures. When it received the deeds for the property, TTI apparently made no further effort to issue the debentures.

The Court is also informed that, despite an order prohibiting TTI from transferring or encumbering any of the Nellis property, it encumbered part of the property in exchange for certain industrial property in

---

**1.** Several months prior to the filing of Diversified's bankruptcy case, Diversified conveyed approximately 30% of its Nellis property to A & W, a related corporation controlled by Irving N. Boren, Diversified's president. The A & W property was treated in the plan as a part of the property of the estate and subject to the Chapter 11 plan.

Cleveland, Ohio, for a house in Hawaii and for four "units" in Malibu, California.

After the transfers to TTI, Valley Bank of Nevada filed a motion and thereafter an adversary proceeding to compel reconveyance of the properties and to require performance under the plan. At a hearing on June 19, 1987 on the adversary proceeding, TTI volunteered and stipulated to submit its interest in the Nellis property to the Court and to have it sold at the auction provided for in the Diversified plan of reorganization. The auction was scheduled, and, after several continuances, was finally set for May 31, 1988.

On May 27, 1988 TTI filed its own Chapter 11 bankruptcy case in the District of Delaware. On May 31, 1988 at approximately 9:30 a.m. various creditors brought a motion before the Court by telephone conference call for authorization to proceed with the auction sale scheduled at 10:00 a.m. that morning. The auctioneer had spent approximately $100,000 in advertising the sale nationwide and in making preparations for the sale. Prospective purchasers had arrived in Las Vegas from around the country and from abroad to bid on the property. Because of TTI's prior submission of the property to the jurisdiction of the Court for the sale, the Court ordered that the sale proceed. Most of the debtor's Nellis property was sold, at a price sufficient to pay all creditors in this case in full.

The unions have brought this motion for the appointment of a committee of secured creditors to permit the secured creditors to protect their interests collectively in the TTI bankruptcy case in the bankruptcy court in Delaware, and in any further proceedings in that court, as well as in the remaining phases of the Diversified case in this Court. The unions also ask that their counsel Rogers & Wells be appointed as counsel for the creditors' committee.

The U.S. Trustee's Office appeared at the hearing on this motion, and took the position that it has no responsibilities with respect to a Chapter 11 case once the plan is confirmed. Thus, in its view, it has no responsibility or power with respect to the appointment of a committee at this stage in this Chapter 11 case.

## III. ANALYSIS

The motion before the Court raises two principal issues: (1) whether the Court has the jurisdiction or power to appoint a creditors' committee after the confirmation of a Chapter 11 plan; (2) whether, if the Court has the power to appoint such a committee, that power should be exercised under the circumstances of this case. The debtor opposes the motion both on the grounds that the Court has no power or jurisdiction after confirmation of a plan to appoint such a committee, and that such a committee should not be appointed under the circumstances of this case, even if the Court has such power.

These apparently are issues of first impression, on which there is no published authority.

### A. *Power to Appoint a Committee*

■ The appointment of a creditors' committee is authorized under Bankruptcy Code § 1102(a), which provides:

(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors ... as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors ... if necessary to assure adequate representation of creditors.... The United States trustee shall appoint any such committee.

11 U.S.C. § 1102(a) (Supp.1988).

The duties of a committee appointed under section 1102 are set forth in part in section 1103(c):

A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition

of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

 (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

 (4) request the appointment of a trustee or examiner under section 1104 of this title and

 (5) perform such other services as are in the interest of those represented.

The foregoing list is not exhaustive: a committee of creditors may undertake other appropriate duties.

The purpose of a committee of unsecured creditors is to monitor the operations and activities of the debtor and its compliance with the requirements of the Bankruptcy Code. G. Treister, J. Trost, L. Forman, K. Klee & R. Levin, *Fundamentals of Bankruptcy Law* 349 (1986). Because the Bankruptcy Code contemplates that no trustee will be appointed in the typical Chapter 11 case, the creditors' committee has the principal monitoring responsibility. The Code assumes that the unsecured creditors' committee is eager to serve and adequately staffed.[2] *Id.*

The duties of a creditors' committee and any special committee appointed under section 1102(a)(2) often terminate upon confirmation of a plan. At confirmation (or on the effective date of the plan, if different) the property of the estate is revested in the debtor except as provided in the plan, and the debtor proceeds on its way without further court supervision, except as provided in the plan. *See* Bankruptcy Code § 1141, 11 U.S.C. § 1141 (1979). Normally there is no need for further supervision by a trustee or a creditors' committee. Professionals hired by the estate, by any trustee, and by a creditors' committee normally complete their duties at the time of confirmation, and shortly thereafter they make their final applications for compensation.

The debtor argues that the bankruptcy court loses jurisdiction after confirmation of a plan, except as specified in the plan and in Bankruptcy Code § 1142. The debtor further argues that, since neither the plan in this case nor section 1142 gives the Court the authority to appoint a committee of creditors after confirmation of the plan, the Court lacks jurisdiction to appoint the committee requested by the unions.

This argument is misplaced. Section 1142 provides:

 (a) Notwithstanding any other applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan, and shall comply with any orders of the court.

 (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142 (Supp.1988). Paragraph (a) in essence requires the debtor to carry out the plan. Paragraph (b) in essence specifies that the bankruptcy court has the power to compel performance of the plan. Section 1142 does not purport to limit the jurisdiction of the bankruptcy court after the confirmation of a plan.

Any limitation on the Bankruptcy Court's jurisdiction after confirmation would logically be placed in section 1141 of the Bank-

---

**2.** In fact, in most Chapter 11 cases there is no active creditors' committee at all. In consequence, in most Chapter 11 cases there is little monitoring of the debtor's compliance with the requirements of the Bankruptcy Code. The United States Trustee provides a certain measure of monitoring of compliance with the reporting requirements under Chapter 11. The principal sanction for substantial non-compliance is dismissal of the case or conversion to a case under Chapter seven.

ruptcy Code,[3] which provides for the effects of confirmation. If Congress had intended to limit the bankruptcy court's jurisdiction after confirmation, it most likely would have written such limitations into this section. However, there is no jurisdiction-limiting language in section 1141, or elsewhere in Chapter 11 of the Bankruptcy Code.

There is no provision in Chapter 11 specifically requiring that the duties of a creditors' committee cease with the confirmation of a plan. Section 1102(a)(1) contemplates that a committee of unsecured creditors be appointed near the outset of the case. However, section 1102(a)(2) imposes no explicit time limitation with respect to the appointment of a committee of creditors.

Most of the duties set forth in section 1103(c) are discharged before the confirmation of a plan. However, some of the language of section 1103(c) clearly can apply to duties and responsibilities after confirmation. Section 1103(c)(2) extends the powers of a committee to "investigate ... any other matter relevant to the case...." Section 1103(c)(5) authorizes a committee to

"perform other services as are in the interest of those represented." The investigation of matters relevant to the case may include investigations after the confirmation of a plan. There may be services in the interest of creditors that are necessary or appropriate after confirmation of the plan. A typical example is the litigation of claims, in which a creditors' committee may participate, that are not yet resolved at the time of confirmation.

Such investigation may be necessary particularly where, as here, issues arise with respect to the debtor's performance of the debtor's obligations under the plan. In addition, it may be in the best interests of a class of creditors to act collectively with respect to a debtor's performance of its obligations under a confirmed plan, and a committee of creditors may be appropriate to perform these services.

Because a committee of creditors may have responsibilities and carry out duties after the confirmation of the plan, such a committee may also be appointed for this purpose after the confirmation of a plan of reorganization. While such collective ac-

---

3. Section 1141, 11 U.S.C. § 1141 (1979 & Supp. 1988), provides:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, or equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirma-

tion, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

tion by creditors is usually not needed after the confirmation of a plan, circumstances may arise where such collective action is appropriate. The unions in the motion before the Court assert that such a need has now arisen in this case.

The Court finds that it has the jurisdiction and the power to appoint a creditors' committee, including the appointment of a special creditors' committee for secured creditors, after the confirmation of a Chapter 11 plan but before the plan has been consummated.

B. *Need for a Committee in this Case*

■ Having determined that the Court has the power to appoint a creditors' committee, including the secured creditors' committee requested by the unions in this case, the Court turns its attention to whether such a committee is needed in this case.

The performance of the debtor under the plan of reorganization in this case has not been stellar. The debtor asserts that it was "tricked" into transferring the Nellis property to TTI, and that it received nothing in return. If the transfer resulted from trickery by TTI, this casts serious doubt on the business capability of the debtor's management.

Furthermore, the debtor did not act promptly to set aside the TTI transaction after it learned of the "trickery," and it did not act expeditiously to have the property sold at auction after the first year had expired. The auction sale resulted only after motions and adversary proceedings were initiated by the secured creditors.

The Court finds that the facts of this case justify the appointment of a creditors' committee to oversee the performance of the plan by the debtor.

Most of the debt in this case is held by secured creditors. In addition, the issues that have now been brought before the Court relate to the sale of the property of the debtor to repay the secured creditors. In consequence, the Court finds that the appointment of a committee of secured creditors is proper and appropriate in the circumstances of this case.

Section 1102(a) designates the United States Trustee as the appointing power for a committee of unsecured creditors or other committee. Because the United States Trustee in this case has taken the position that he has no further responsibility in the case, the Court will appoint the appropriate committee.

In consequence, the Court appoints the following as members of a special secured creditors' committee: the unions that are the moving parties before the Court, the FDIC, the City of North Las Vegas, and Valley Bank of Nevada. This appointment is subject to agreement to serve by each of these parties: any party that does not agree to serve will not be included in the committee.

C. *Appointment of Counsel*

The unions also request this Court to appoint their counsel Rogers & Wells as counsel for the committee of secured creditors. The debtor objects on the grounds that Bankruptcy Code § 1103(a) requires a committee to meet and to select its own counsel. This objection is well taken.

The appointment of counsel for a committee of creditors is governed by Bankruptcy Code § 1103(a), which provides:

> At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys ... to represent or perform services for such committee.

11 U.S.C. § 1103(a) (1979).

The Court directed that a meeting of the committee of secured creditors take place by telephone conference call on the afternoon of July 14, 1988. At this meeting Rogers & Wells was selected as counsel for the committee. The Court has appointed Rogers & Wells as committee counsel, after its qualification for such appointment under Bankruptcy Code § 327, 11 U.S.C. § 327 (1979 & Supp.1988), and Bankruptcy Rule 2014.

## IV. CONCLUSION

The Court concludes that a committee of creditors may be appointed during the pendency of a Chapter 11 case, after the plan has been confirmed by the Court. The Court further concludes that, in the circumstances of this case, it is appropriate to appoint a committee of secured creditors to monitor and to assist in the performance of the plan of reorganization.