**In re Gerald T. MOSELEY, Ann H. Moseley, Debtors.**

**Bankruptcy No. 4–91–00619(7).**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 8, 1993.

John W. Ames, Greenebaum Doll & McDonald, Louisville, KY, for debtor.

Ronald Bamberger, Bamberger & Abshier, Owensboro, KY, for Liberty Nat. Bank.

Joseph W. Castlen, III, Owensboro, KY, trustee.

Joseph J. Golden, Louisville, KY, Asst. U.S. Trustee.

## MEMORANDUM–OPINION

DAVID T. STOSBERG, Bankruptcy Judge.

This matter is before the Court on the motion for payment of administrative fees and expenses filed by the law firm of Bamberger & Abshier, attorneys for the Unsecured Creditors' Committee. The applicant requests that the Court enter an order allowing compensation in the amount of $8,976.00 for professional services rendered to the Unsecured Creditors' Committee and $189.23 for reimbursement of expenses for a total amount of $9,165.23. One objection to the payment of attorneys' fees requested by Bamberger & Abshier was by the Trustee who thought the claim would be in the category of § 503(b)(2) which is of a lesser priority than § 503(b)(1) expenses. The Trustee thought that the payment of § 503(b)(1) expenses would be jeopardized and payment of other § 503(b)(2) expenses would be impaired if the payment of attorneys' fees was made prior to the completion of the case.

The Debtors, Gerald T. Moseley and Ann H. Moseley, by counsel, filed an objection

to the motion for attorneys' fees and expenses to Bamberger & Abshier on the ground that these fees did not constitute reasonable compensation for necessary services rendered by them to the Unsecured Creditors' Committee nor were such services of value to the Unsecured Creditors' Committee. The Debtors feel that only a small percentage of the time for which reimbursement is requested was spent negotiating with the Debtors regarding payment to the Unsecured Creditors. Only 13 of the 56.1 hours were spent in negotiations with Debtors.

The specific objections to the application are for the 6.9 hours relating to their review and research regarding Ann Moseley's spendthrift trust, 10.9 hours relating to the adversary proceeding filed by Central Bank and Trust against the Moseleys, 8.5 hours researching whether Gerald Moseley's employment contract was an asset of the estate, and an objection to the expense requests recorded for August 23, 1991, December 17, 1991 and January 17, 1992. The basis for the argument in regards to the expenses were that they were not itemized nor was it evident from the listing what mileage rate was charged.

11 U.S.C. § 1103(c) provides:

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

§ 1103(c) states that a § 1102 committee "may" decide certain functions. It is important to note that creditors' committees appointed pursuant to § 1102(a) have a duty to monitor the business affairs of a debtor. This Court in *In re Western Management, Inc.*, 6 B.R. 438 (Bankr.W.D.Ky. 1980) found that it was envisioned by the legislators that when they removed the bankruptcy judge as overseer of a Chapter 11 case, that the committee would fill the void to investigate and monitor the case. The Statute is very clear in that a committee may investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the strength and weaknesses of the debtor's business, or any other matter related to the case or to the formulation of a plan.

The Sixth Circuit in *In re George Worthington Co.*, 921 F.2d 626 (6th Cir.1990) felt it is implied in the overall scheme for reorganization and in the legislative history of the Code and its Amendments, that an unsecured creditors' committee is entitled to reimbursement of administrative expenses from the debtor's estate. *Id.* at p. 634.

The purpose of the fee application is to provide the bankruptcy court with sufficient information to enable it to determine whether services rendered were reasonable, actual and necessary. *In re J.F. Wagner's Sons Company*, 135 B.R. 264 (Bankr.W.D.Ky.1991). With respect to an unsecured creditor's committee, "necessary services" for which the professional may be allowed compensation are those rendered to the committee in connection with the committee's performance of its functions under the Bankruptcy Code. *In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482 (Bankr.N.D.Ill.1992). The crux of the Debtors' objection is that the request is not reasonable compensation for necessary services or that the services were of no value to the unsecured creditor's committee. Because the Bankruptcy Code contemplates that no trustee will be appointed in a typical Chapter 11 case such as the one before

the Court, the Unsecured Creditor's Committee has the principal monitoring responsibility. *In re Diversified Capital Corp.,* 89 B.R. 826 (Bankr.C.D.Cal.1988). The Debtors' Committee did provide necessary services within the meaning of the provisions of the Bankruptcy Code because they were fulfilling their duties under the Code to investigate the financial affairs of the Debtors. The cost of services performed by professionals on behalf of the Unsecured Creditors' Committee may be paid by the estate even if those services do not result in a monetary benefit to the estate. *In re Lifschultz Fast Freight, Inc., supra.* at p. 488. A review of the application does not reveal anything but the activities of Committee counsel fulfilling their duty to thoroughly investigate the financial affairs and activities of the Debtors. We note that these affairs involved unusual issues concerning a spendthrift trust and a complex adversary proceeding.

Therefore, this Court will allow the applicant compensation in the sum of $8,976.00 for professional services rendered to the Unsecured Creditors' Committee and $189.23 for reimbursement of expenses, for a total of $9,165.23.

This Memorandum–Opinion constitutes Finding of Facts and Conclusions of Law and an Order consistent herewith shall be filed this date.