## In re PITTSBURGH TERMINAL COAL CORP.

## Appeal of PITTSBURGH TERMINAL REALIZATION CORP.

### No. 10143.

United States Court of Appeals
Third Circuit.

Argued April 21, 1950.

Decided July 24, 1950.

Leonard H. Levenson, Pittsburgh, Pa., George Zolotar, New York City (Roger S. Foster, General Counsel, David Ferber, Special Counsel, Washington, D. C., Arthur A. Burck, New York City, Ellwood L. Englander, Washington, D. C., on the brief), for Securities and Exchange Commission.

James I. Marsh, Pittsburgh, Pa., for trustee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Under its plan for reorganization, the assets of Pittsburgh Terminal Coal Corporation were taken over by its successor corporation, the appellant, for the purposes of liquidation. The by-laws of the latter company limited it to an existence of five years, which could be extended for an additional five years. The by-laws also provided that the total yearly compensation to be paid an officer or director of the company for services was not to exceed $5,000. A special meeting of the stockholders of appellant was called for December 12, 1949. The purpose of this meeting was to extend appellant's period of existence and to increase its salary limit. On December 7, 1949, the Securities and Exchange Commission filed a petition with the bankruptcy court asking for an order authorizing an investigation of the trading activities of the members of the Pittsburgh Terminal

Coal Corporation Preferred Stockholders' Protective Committee, members of their families and business associates. On the same day, the Coal Corporation Trustee filed a companion petition which made the S.E.C. petition a part thereof. The Trustee asked for a preliminary injunction of the appellant's stockholders' meeting and for an order authorizing and directing the Trustee to investigate appellant for the limited object of determining whether the terms, provisions, intent and purpose of the plan were being, and had been, complied with. On December 9, 1949, after hearing the matter, the District Court preliminarily enjoined the meeting and ordered the Trustee to investigate appellant for the purpose of determining whether it had been conducted in accordance with the Coal Company plan of reorganization. This appeal is from that order.

Appellant contends that the District Court had no jurisdiction over it; that the Trustee had no right or duty to supervise its affairs; that the proposed amendments to its by-laws are lawful, and that court approval is not necessary to their adoption by the stockholders.

Appellant argues at considerable length the general proposition that a District Court cannot "* * * keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, * * *." North American Car Corporation v. Peerless Weighing & Vending Machine Corporation, 2 Cir., 143 F.2d 938, 940. There is no difficulty about that principle. Both the Trustee and the Securities and Exchange Commission accept it as sound law. But, as also said in the same case,[1] "Nevertheless the court must retain some jurisdiction after confirmation of a plan to see that it is consummated." In re New York, New Haven & Hartford R. Co., 2 Cir., 169 F.2d 337, at page 340, follows with approval Towers Hotel Corp. v. Lafayette National Bank, 2 Cir., 148 F.2d 145, 148, and holds, "* * * jurisdiction may be retained by the court 'in order to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.'" Whether, when a debtor corporation has been reorganized, the jurisdiction of the bankruptcy court is concluded depends upon "the provisions of the plan as confirmed and reservations, not inconsistent therewith, contained in the order of confirmation." In re 4145 Broadway Hotel Co., 7 Cir., 131 F.2d 120, 122, certiorari denied sub. nom. Thomas v. Rossiter, 318 U.S. 766, 63 S.Ct. 665, 87 L.Ed. 1137. See also In re George F. Nord Building Corporation, 7 Cir., 129 F.2d 173, 176; Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299; Shores v. Hendy Realization Co., 9 Cir., 133 F.2d 738, 741; Mar-Tex Realization Corporation v. Wolfson, 2 Cir., 145 F.2d 360.

Bell v. Roberts, 3 Cir., 112 F.2d 585, is not in conflict with the above cases. The problem there did not involve the attempted defeat of a major objective of the plan, as charged here. It concerned the contention that an attorney's fee, ordered paid by the reorganized debtor, was in the custody of the court and therefore free from attacking creditor proceedings. In re Camden Rail & Harbor Terminal Corp., D.C.N.J., 35 F. Supp. 862, also urged by appellant as supporting its position, was decided on its particular facts and under the above broad principles. The bankruptcy court, in that case, quite properly refused to interfere in a quarrel between two groups of stockholders in a reorganized corporation.

The law unquestionably is that the retention by the bankruptcy court of jurisdiction over the reorganized debtor or, as in this instance, its successor corporation, depends upon the particular facts. In the case before us the Trustee has not filed his final account and no final decree has been entered. The appellant successor corporation was created in order to liquidate the remaining assets of the debtor. To prevent undue prolongation of the liquidation process and excessive expense in that connection, appellant was given the limited existence of five years, with a possible ex-

---

[1] In the North American Car decision the jurisdiction of the bankruptcy court was sustained though the court was held guilty of an abuse of discretion.

tension of five more years after that, and a salary ceiling of $5,000 a year for all corporate officers and directors. Those provisions were inserted in the by-laws. Appellant's theory is that the increasing of the duration of the corporate existence and the removal of the salary restriction merely means a technical change in the by-laws; that it is entirely a matter of intra corporate policy having nothing to do with the reorganization plan and its rightful functioning.

■■ The situation is not as simple as that. The charge is directly made that the person controlling the appellant, Alexander Guttmann, is endeavoring to defeat an important element of the plan. The alleged background presented is that Monroe Guttmann, son of Alexander, is on the payroll of appellant at $12,000 a year with the title of assistant to the president; that Alexander Guttmann's son-in-law is employed by the company and, with bonuses, receives more than $5,000 a year; that the son and son-in-law have an arrangement with appellant to engage in strip mining operations financed by appellant on its marginal coal outcroppings. In 1946, appellant transferred certain coal lands in West Virginia to Alexander Guttmann and the three other major stockholders for $1,939 cash against the aggregate purchase price of $19,390, with the balance in 3% mortgages due December 24, 1951. A year's interest due December 31, 1948, was unpaid with no action taken regarding it by appellant. In the four years for which figures are available, from 1945 to 1948, the cost of operating appellant corporation averaged $78,000 a year. Documents from the files of appellant, particularly a letter from Guttmann, Jr. to his father, dated July 28, 1949, which enclosed "a second opinion by Mr. Levinson," the Guttmann attorney, indicate that the endeavor to change the by-laws arose from Guttmann's determination to receive compensation from appellant for his services as chairman of the stockholders' committee. His application to the court for such fee was discouraged by his son because he thought that since Guttmann and his family had traded in appellant's stock, such application to the court would be fool-

ish, and "subsequent payment by the corporation would appear to be an evasion of the refusal by the Court and might well lead to trouble." The counter suggestion was made in young Guttmann's letter, namely, "It appears to me that the better approach would be to change the by-laws of the company with the approval of the Court based upon the inequity of the situation and then to have the stockholders approve a substantial bonus which would get the same results as an application to the Court." At the hearing, counsel for appellant stated, *"We have no objection to the investigation, so long as it doesn't unreasonably interfere with the activities of the company; and any request the Trustee may have for the books, records and things in the office will be freely granted."* Following that, appellant applied for modification of the order of December 9, 1949. Decision was reserved on this. If it had been allowed it would have appreciably restricted the investigation called for by the December 9th order. On January 9, 1950, this appeal was taken.

The order of December 9, 1949, protected the existence of appellant by extending its duration for a year and providing for further extensions if necessary. The investigation was authorized and directed " * * for the purpose of determining whether or not said corporation has been conducted in conformity with the terms, provisions, intent and purpose of the Plan of Reorganization of Pittsburgh Terminal Coal Corporation, Debtor." Report of the investigation is to be made to the bankruptcy court.

■ In view of the charges made, and they are not seriously disputed by appellant, the Trustee would have been remiss in his duty if he had not brought this matter to the attention of the Court and urged that the charges be investigated. The charges concern an important phase of the plan which is still in process of being carried out. It was as part of the plan and to accomplish its purpose that appellant was created. If appellant now seeks by the proposed change in its by-laws to violate the letter and spirit of that plan, the facts should be examined. And while they are being examined appellant should

524

be prevented from doing the very acts which are protested. That stockholders are not formally objecting is by no means decisive under all the circumstances. Clearly, the estate of the Coal Company is still in process of administration. It is the Trustee who, until the final decree is entered,· is responsible for the completion of the reorganization in accordance with the plan. The charges that appellant is deliberately attempting to evade the plan are serious and substantial. It was the Trustee's right and obligation to bring them to the attention of the Court. And under the plain mandate of the corporate reorganization law, above referred to, the problem is definitely within the jurisdiction of the reorganization court.

The order of the District Court of December 9, 1949, will be affirmed.