In re GHR ENERGY CORP., f/k/a Good Hope Refineries, Inc., the GHR Companies, Inc., f/k/a Good Hope Industries, Inc., GHR Pipeline Corp., f/k/a Southern Pipe Line Corporation, Southern States, Inc., and Southern States Exploration, Inc., Debtors.

Bankruptcy Nos. 4–83–00056–G, 4–83–00060–G, 4–83–00092–G, 4–83–00093–G and 4–83–00094–G.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 29, 1983.

Stephen Gordon, Boston, Mass., for debtor—Good Hope Energy Corp.

Robert M. Gargill, Boston, Mass., for debtors' secured bank creditors—Continental Illinois Nat. Bank & Trust Co. of Chicago.

Sumner Darman, Boston, Mass., for Creditors' Committee The GHR Companies.

Joseph Braunstein, Boston, Mass., for Creditors Committee GHR Energy.

Van Oliver, Dallas, Tex., for Creditors Committee GHR Pipeline Corp., Southern States, Inc., So. States Exploration, Inc.

Gerrard Kelley, Asst. U.S. Trustee, Paul P. Daley, Boston, Mass., for Texas Drilling Co.

## MEMORANDUM

PAUL W. GLENNON, Bankruptcy Judge.

The debtors' motion for reconsideration of the Court's order of October 12, 1983 denying the debtors' application for examination of Texas Drilling Company and others pursuant to Bankruptcy Rule 2004 was denied by order dated November 9, 1983. This memorandum sets forth the Court's reasons for its November 9 order.

## PROCEDURAL BACKGROUND

GHR Energy Corp., The GHR Companies, Inc., GHR Pipeline Corp., Southern States, Inc. and Southern States Exploration, Inc. ("debtors"), five related Chapter 11 debtors in possession, filed an application requesting an order requiring Texas Drilling Company ("TDC") and others to appear for an examination pursuant to Bankruptcy Rule 2004. The Court denied the application without a hearing on October 12, 1983 citing in support thereof its decision of September 26, 1983 which denied the motion of these same debtors (and two other related debtors) for examination of James W. Glanville pursuant to Bankruptcy Rule 2004 ("Glanville decision").[1] The debtors, on October 20, 1983, filed a motion for reconsideration of the October 12 order and for a hearing. In the accompanying cover letter, the debtors requested a hearing be held on October 27, 1983. The motion for reconsideration and cover letter were copied to TDC. The next day, October 21, 1983, the debtors were in court for a number of matters unrelated to the motion for reconsideration. In the course of the scheduled hearings, debtors' counsel asked the Court to reconsider its October 12 order. The Court heard counsel and allowed the motion to reconsider and entered an order authorizing the debtors to examine the listed individuals and entities. The debtors' motion was supported by their secured bank lenders and two of the three creditors' committees. No objection was then raised.[2] Shortly thereafter, on that same date, counsel for TDC was in Worcester and upon examining the docket of these administratively consolidated cases, discovered that an order had been entered on that date allowing the examinations to proceed. TDC immediately filed a handwritten motion for reconsideration of the Court's order of October 21, 1983 on the grounds that the debtors did not serve the original application to examine (dated October 7, 1983) nor the motion for reconsideration (dated October 19, 1983)[3] on TDC's counsel although counsel had filed a notice of appearance for TDC. The Court's appearance docket reflects on page one that an appearance was filed by TDC's counsel on February 10, 1983, shortly after two Chapter 11 petitions were filed and on the same day that the remaining three petitions were filed.[4] Counsel for TDC stated that he had relied upon the cover letter accompanying the debtors' motion for reconsideration (served on TDC) which requested a

1. The debtors sought to examine James W. Glanville, an expert hired by the law firm of Wachtell, Lipton, Rosen & Katz, co-special counsel to the debtors' secured bank lenders, to analyze the financial feasibility of converting a visbreaker to a delayed coker. *See In re GHR Energy Corp.,* 33 B.R. 451, 10 B.C.D. 1432 (Bkrtcy.D.Mass.1983).

2. The Court recognizes that a Rule 2004 motion may be made *ex parte* and even orally. Oftentimes when an application appears proper on its face, it will be allowed. It is only when an objection is filed that the Court has an opportunity to fully investigate the purpose behind the examination. *See In re duPont Walston, Inc.,* 4 B.C.D. 61 (Bkrtcy.S.D.N.Y.1978).

3. The certificate of service attached to the original application indicates that TDC, by its officers located in Abilene, Texas, was served with a copy of the application. Additionally, the certificate of service attached to the motion for reconsideration indicates that on October 19, 1983, TDC was sent, by Federal Express overnight delivery service, the motion for reconsideration. Counsel for TDC agreed that TDC had received both motions.

4. Fed.R.Civ.P. 5(b), made applicable to this application by Bankruptcy Rule 7005, requires service on a party's attorney whenever service on a party is required. Fed.R.Civ.P. 5(a) excepts from this service requirement *inter alia* motions which may be heard *ex parte*. Arguably then, TDC's counsel was not entitled to notice. *See supra* note 2.

hearing on October 27, 1983, and accordingly was preparing an opposition to that motion believing it would be heard on October 27, 1983. After reviewing TDC's motion for reconsideration which stated TDC's intention to be present on October 27, 1983, and TDC's lack of knowledge of the October 21 hearing, the Court revoked its order entered earlier that day and set the debtors' motion for reconsideration down for October 27, 1983 at 10:00 A.M.[5] The hearing was continued by agreement until October 28. After hearing the arguments of the parties and reviewing the memoranda submitted in support thereof, on November 9, 1983, the Court denied the debtors' motion for reconsideration and reaffirmed its order of October 12, 1983.

## FACTS

By way of a Bankruptcy Rule 2004 application, the debtors seek to examine certain individuals and entities some of whom the debtors have assigned rights in drilling sites in Webb County, Texas and who the debtors allege have been acting to advance their own interests, contrary to the interests of the debtors and in violation of agreements made with the debtors. The debtors allege that these individuals and entities are "secreting" and "spiriting away" assets of the debtors thereby interfering with the administration of the debtors' estates, and participating in criminal activities. Specifically, the debtors allege that TDC, by its officers and employees (some of whom are past employees of one or more of the debtors), its banks and its financiers, and certain other individuals who are not formally associated with TDC, are acquiring acreage within two miles of land leased by the debtors in violation of contracts entered into with the debtors. The debtors claim that they need information from these individuals and entities to determine if an adversary proceeding should be brought against them because of these alleged violations. The debtors filed the affidavit of N. Kenneth May, land manager for GHR Energy Corp., who states he is familiar with the agreements entered into among the debtors and the various individuals and entities. He further states that a review of reports of instruments filed in Webb County disclosed that certain of these individuals and/or entities have recently acquired leases covering acreage adjacent to land leased by one or more of the debtors.

## DISCUSSION

■ The debtors misconstrue the purpose of Bankruptcy Rule 2004.[6] Rule 2004 (and its predecessor Rules) is intended to give parties in interest an opportunity to examine those individuals having knowledge of the financial acts and affairs of a debtor. "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to

---

**5.** Accordingly, the Court believes it is being called upon to reconsider its order of October 12, 1983, rather than its order of October 21, 1983 which revoked its earlier order allowing the debtors' application. However, on October 28, 1983, the Court granted the debtors' request for an additional ten days to file an appeal from the second October 21, 1983 order and on November 10, 1983, the debtors filed a notice of appeal of the Court's revocation of its order of October 21, 1983 which allowed the debtors' application.

**6.** Bankruptcy Rule 2004 provides, in relevant part:
    (a) EXAMINATION OF MOTION. On motion of any party in interest, the court may order the examination of any person.
    (b) SCOPE OF EXAMINATION. The examination of any person under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In an individual's debt adjustment case under chapter 13 or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States,* 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914).

The persons to be examined and the parties in interest who may conduct the examination are not defined in the Rules nor the Code. However, by looking to the language of Rule 2004, it is evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy. In *In re Mantolesky,* 14 B.R. 973, 8 B.C.D. 384 (Bkrtcy.D.Mass.1981), I recognized this and allowed the examination of the debtor's former partner who was responsible for all administrative functions (including the payment of bills and taxes) of the partnership. However, the permissible examination was limited to those questions which sought information of the debtor's business or the debtor's financial picture. *See also In re Clearview Concrete Products, Inc.,* 23 C.B.C. 373 (Bkrtcy.E.D.N.Y.1980) (examination of debtor's accountant permitted to determine to what use debtor's funds were put); *In re Maidman,* 2 B.R. 18, 5 B.C.D. 1299 (Bkrtcy.S.D.Fla.1979) (debtor entrusted all business matters to son; therefore court allowed Rule 205 examination of son by creditor); and *In re Park Crescent Nursing Home,* 5 B.C.D. 721 (Bkrtcy.S.D.N.Y.1979) (trustee authorized to examine state agency to determine if agency wrongfully recouped funds belonging to the debtor's estate where agency was responsible for establishing formula for reimbursement of funds to debtor and held information relevant thereto). The permissible scope of a Rule 2004 examination is one of the two reasons I denied the debtors' application in the Glanville decision. In that case, the debtors were attempting to examine an expert hired by their creditors. In denying the application I stressed the absence of any evidence that the expert possessed knowledge of the financial picture of the debtors which the debtors·themselves did not possess.

·The debtors cite *In re Goodwin,* 38 F.2d 669 (D.Mass.1939), for the proposition that the overriding purpose of a 2004 examination is to enable the trustee to determine whether or not an action against the examinee [7] may lie. Initially, the quotation the debtors cite is nowhere in the *Goodwin* case. Secondly, the *Goodwin* case allowed the examination of an officer of a corporation against which the debtor brought suit but specifically warned the trustee not to "transcend the limits of legitimate investigation" that being "any information that will assist in discovering bankrupt's property, or ... acts and conduct of the bankrupt at all material to the administration of the bankrupt's estate." *Goodwin* at 670.

The debtors also argue that the case of *In re Good Hope Refineries, Inc.,* 9 B.R. 421 (Bankr.D.Mass.1981) stands for the proposition that a Rule 2004 examination (then Rule 205) may not be used by a debtor *post-confirmation.* True, in that case the application was made by the debtor post-confirmation. However, I do not believe that ruling was intended to apply only to post-confirmation applications. As I quoted in the Glanville decision

[t]here may ... be a question as to whether Rule 205 was ever intended for a Chapter XI debtor who, whatever other problems may exist, unlike the Trustee [is] not in need of a quick factual fix relative to the estate, its existence and location. *Id.* at 423. .

By this I do not mean to suggest that a debtor may never properly invoke Rule 2004 but I do believe Rule 2004 is creditor and trustee oriented.

I agree with the debtors that the scope of a Rule 2004 examination is broad. In light of the many cases which have passed on this question, it cannot be debated. *See, e.g., Sachs v. Hadden,* 173 F.2d 929 (2d Cir.1949) and *In re Foerst,* 93 F. 190 (S.D.N.Y.1899).

---

**7.** I agree that a Rule 2004 examination may be undertaken for this reason, among others, and do not believe my decision runs counter to those decisions so holding. *See, e.g., Marx v.* *Chase National Bank,* 117 F.2d 800 (2d Cir. 1941); *In re Paramount Publix Corp.,* 82 F.2d 230 (2d Cir.1936); and *In re Insull Utility Investments, Inc.,* 27 F.Supp. 887 (S.D.N.Y.1934).

However, it must *first* be determined that the examination is proper. "Obviously, the breadth of the language employed in the Rules is so all encompassing as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the judicial process certainly was never contemplated." *In re Georgetown of Kettering,* 17 B.R. 73, 75, 8 B.C.D. 934, 935 (Bkrtcy.S.D.Ohio 1981).

The debtors allege that the information sought is necessary in order that they may determine whether to bring a complaint against certain of the individuals and entities. From the evidence presented to me, it seems that the debtors are now in a position to file an action against certain of the individuals and entities if they so choose. It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure (or where appropriate any other similar state discovery rules). While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded by the Federal Rules of Civil Procedure especially in the context of an action arising under non-bankruptcy law. *See In re duPont Walston, Inc.,* 4 B.C.D. 61 (Bkrtcy.S.D.N.Y.1978) and *In re Western Pork Packers, Inc.,* 5 B.C.D. 396 (Bkrtcy.S.D.N.Y.1978).

The fact that if a lawsuit were to be filed the defendants would raise the defense of the bankruptcy court's lack of subject matter jurisdiction following the case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), is irrelevant, contrary to the debtors' assertions. Such a defense could be raised *whenever* a suit is filed. More specifically, if I were to allow the debtors' motion to examine the named individuals and entities and some time in the future the debtors decided to bring suit against these individuals and entities, the individuals and entities would be free *at that time* to raise the *Marathon* defense.

Furthermore, this Court has been conducting hearings involving questions of state law, and in accordance with the Emergency Rule adopted by the Circuit Council for the First Circuit on December 22, 1983, has entered findings of fact, conclusions of law and proposed orders, and submitted same for review to the United States District Court.

While I recognize the potential harm to the debtors if these individuals and entities are truly taking advantage of contracts and information which belong to the debtors, I do not agree with the debtors that a Rule 2004 examination is the proper vehicle for relief. It will oftentimes be difficult for a Court to determine whether the person whose examination is sought can be said to have information relative to the debtor's financial affairs or facts necessary to the administration of the debtor's estate. However, from the evidence presented to me, I am unable to find that the individuals and entities harbor any information properly discoverable by the debtors in the context of a Rule 2004 examination. As it is within my discretion to permit a Rule 2004 examination to proceed, *see, e.g., McLaughlin v. McPhail,* 707 F.2d 800 (4th Cir.1983); *In re Rassi,* 701 F.2d 627, 10 B.C.D. 385 (7th Cir. 1983); and *In re Machek,* 368 F.Supp. 956 (M.D.Fla.1973) (and cases cited therein), I decline to so exercise this discretionary power and instead follow the direction of *Travis v. United States,* 123 F.2d 268 (10th Cir.1941) wherein the Court stated "unreasonable discursiveness should not be permitted; and frivolous or prolix examination should be stopped". *Id.* at 271.