**In re CINDERELLA CLOTHING INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 83–04477F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 21, 1988.

Peter D. Wolfson, Myerson & Kuhn, New York City and Philadelphia, Pa., for applicants, Intern. Ladies' Garment Workers' Union and ILGWU Nat. Retirement Fund.

Michael L. Temin, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for objectors, Gerald J. McConomy, and James M. Matour.

Myron A. Bloom, Adelman Lavine Gold & Levin, Philadelphia, Pa., for objector, Frank G. Santillo.

Erwin L. Pincus, Pincus, Bressler, Hahn, Reich & Weinberg, P.C., Philadelphia, Pa., for objector, Erwin L. Pincus.

Thomas Zielinski, William Howard, Cozen & O'Connor, Philadelphia, Pa., for George N. Collie, objector, and Harry J. Conn.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The International Ladies' Garment Workers Union and the ILGWU National Retirement Fund, joined orally by another creditor, have filed an application to take examinations pursuant to Bankr.Rule 2004 of the following individuals: Gerald J. McConomy, Esquire; James M. Matour, Esquire; Erwin L. Pincus, Esquire; Frank G. Santillo; Harry J. Conn; and George M. Collie. All but Mr. Conn have filed objections to the application. This narrow dispute concerns the appropriateness of conducting 2004 examinations post-confirmation.

### I.

On November 16, 1983, Cinderella Clothing Industries, Inc., a manufacturer of girls' clothing, filed a voluntary petition in bankruptcy under chapter 11. By July 19, 1984 the creditors' committee had filed a plan of reorganization followed by the debtor's own plan on October 9, 1984. Amendments and objections ensued for a period of years culminating in the confirmation of the debtor's second amended plan of reorganization on April 23, 1987.

The plan has been offered in evidence in this contested matter (Exhibit M–2), *see generally, In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942), and contains the following relevant terms: funding for the plan was to be provided, in large measure, by the sale of certain assets to Since 1914, Inc., a Utah corporation, which was a wholly owned subsidiary of Jolene, Inc., for the sum of $740,000.00 payable in installments with final payment due within 30 months.[1]

The applicants allege that the Union was the collective bargaining agent for the debtor's unionized employees and the Fund was a multiemployer pension plan, *see* 29 U.S.C. §§ 1301 *et seq.*, to which the debtor was obligated to contribute. The applicants further allege that the Union and the Fund held large administrative claims that

---

1. The amended disclosure statement, Exhibit M–3, at Article II ¶ 2.2.1 states that Since 1914, Inc.'s obligations under the purchase agreement were secured by a purchase money security interest in favor of the debtor. The purchase agreement attached to the confirmed plan, though, does not contain this provision.

had to be voluntarily compromised pursuant to 11 U.S.C. § 1129(a)(9) if a plan of reorganization were to be confirmed. In fact, those claims were substantially compromised as part of the negotiations leading up to the confirmation of the debtor's second amended plan.

The instant dispute arises from the applicants' belief that between the time of confirmation and the effective date of the plan, Jolene, Inc. sold approximately 90% of the stock of Since 1914, Inc. to a group of individuals headed by Frank Santillo, the president of the debtor. They further allege that this sale to the debtor's principal was contemplated at the time the disclosure statement was prepared and at the time the confirmation hearing was held, but that this planned transaction was not disclosed to creditors. Had the applicants known that the buyer, Since 1914, Inc., was to be controlled by those who controlled the debtor, they assert that they would not have compromised their claims, or voted in favor of confirmation. In addition, the applicants contend (without contradiction) that Since 1914, Inc. has failed to tender all payments agreed upon in the asset purchase agreement. As a result, they request an order permitting 2004 examinations of the debtor's principals, of counsel to the debtor, and of counsel to Since 1914, Inc. Further, the applicants contend in their application, at ¶¶ 14, 15:

> The Fund and the Union believe that serious questions exist concerning the adequacy of disclosure concerning the foregoing and, moreover, whether fraud was perpetrated upon them, other creditors and this Court in connection with the confirmation and/or implementation of the Debtor's Plan.

> In order to assess (1) whether there was information that should have been disclosed which was not disclosed; (2) whether there was any fraud committed; (3) whether there is liability on the part of any or all of the officers and directors of the Debtor, Jolene, Inc., the Insider Group, including without limitation, Santillo, or any other person, it is necessary to flush out the underlying facts and circumstances. For this purpose, examinations pursuant to Bankruptcy Rule 2004 are required....

Although the disclosure statement made no reference to any sale of Since 1914, Inc. stock to Mr. Santillo, it did contain this disclaimer:

> *Default under 1914 Purchase Agreement.* Because 1914 is required to pay for the assets it is to purchase under the 1914 Production Agreement in installments over time, there is no absolute assurance that all payments will be timely made. 1914, although a subsidiary of Jolene, Inc., has no assets and operations other than those associated with or to be acquired under the 1914 Production Agreement and the 1914 Purchase Agreement. Consequently, 1914's ability to make the payments due under the 1914 Purchase Agreement is dependent upon the production of goods under Cinderella's trademarks and upon proceeds of 1914's licensing of same to third parties....

Exhibit M–3, VII, A, at 10. The disclosure statement noted that Mr. Santillo was to be an employee of Since 1914, Inc. but did not mention any prospective ownership interest. (Exhibit M–3, X, at 11).

## II.

■ According to the objectors (who deny that the sale of stock of Since 1914, Inc. was contemplated prior to confirmation), the initial hurdle for the applicants to overcome is the statute of limitations bar found in 11 U.S.C. § 1144:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

> (2) revoke the discharge of the debtor.

There is no dispute that the instant application was filed long past the 180 day limitations period established by section 1144, and hence must be disallowed. *See, e.g., Matter of Newport Harbor Associates*, 589 F.2d 20 (1st Cir.1978) (six-month limitation period of former 11 U.S.C. § 386, the Bankruptcy Act predecessor to current § 1144, was strictly construed). Any doubt that the requirement of fraud, raised within the applicable limitations period, represents the sole basis for revoking confirmation has been resolved by the 1984 amendment to § 1144 (P.L. No. 98–353, § 515), which added the phrase "if and only if." *Compare In re Isidor Klein, Inc.*, 22 F.2d 906 (2d Cir.1927) (fraud is the only ground upon which confirmation may be revoked) *with* 9 *Collier on Bankruptcy*, ¶ 11.01, at 644 (14th ed. 1978) (a standard akin to Fed.R.Civ.P. 60 may be applied). Thus, the applicants concede that even if their worst fears about the debtor and its principal were realized, pursuant to 11 U.S.C. § 1144 it is now too late to set aside the order of confirmation entered in April 1987. (Applicants' memorandum, at 10). That being so, the question becomes whether this court retains the discretion to order 2004 examinations and, if so, whether that discretion should be exercised.

### A.

The first issue concerns the power of a bankruptcy court to order 2004 examinations of the debtor's principals and non-debtor parties post-confirmation. Since at least 1944, courts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree (*see* Bankr.R. 3020), and ending the "tutelage" status of reorganization, a period "which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility." *North American Car Corp. v. Peerless Weighing & Vend-*

*ing Mach. Corp.*, 143 F.2d 938, 940 (2d Cir.1944).

Courts have balanced these two concerns in various ways, *see Matter of Coral Air, Inc.*, 40 B.R. 979 (D.V.I.1984) (jurisdiction retained); *In re Paradise Valley Country Club*, 26 B.R. 990 (Bankr.D.Colo.1983), *aff'd*, 31 B.R. 613 (D.Colo.1983) (concurrent jurisdiction with state court); *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203 (Bankr.N.D.Ohio 1981) (jurisdiction denied), and differ on the significance of a reservation of jurisdiction clause in either the order of confirmation or the plan itself. *Compare In re Tri-L Corp.*, 65 B.R. 774, 778 (Bankr.D.Utah 1986) (reservation clause in plan or order does not extend jurisdiction beyond that permitted by statute) *and In re J.T. Gerken Trucking, Inc.* (no jurisdiction retained over enforcement of an assumed executory contract) *with Matter of Hudson Feather & Down Products, Inc.*, 36 B.R. 466 (E.D.N.Y.1984) (plan's retention of jurisdiction permits resolution of adversary proceeding, the proceeds of which will not go to creditors).[2] However, it has long been recognized, without dispute, that the bankruptcy court's jurisdiction continues post-confirmation:

> to protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.

*In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d 922, 924 (2d Cir.1966). *Accord, e.g., In re Pittsburgh Terminal Coal Corp.*, 183 F.2d 520 (3d Cir.1950), *cert. denied*, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950); *In re New York, N.H. & H.R. Co.*, 169 F.2d 337 (2nd Cir.1948), *cert. denied*, 335 U.S. 867, 69 S.Ct. 138, 93 L.Ed. 412 (1948); *In re Lombard–Wall, Inc.*, 44 B.R. 928, 935 (Bankr.S.D.N.Y.1984), *aff'd*

---

**2.** The plan itself had a lengthy retention of jurisdiction provision, Article XI, which stated in part:

The Bankruptcy Court shall retain jurisdiction over this proceeding until the Plan has been fully consummated, including, but not limited to, the following matters:

.   .   .   .   .

F. To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the debtor during the pendency of these proceedings;

.   .   .   .   .

I. To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

*in relevant part,* 48 B.R. 986 (S.D.N.Y. 1985).

■ Whether emanating from the general power of courts to enforce their decrees, *see generally* 11 U.S.C. § 105(a); *In re Timbers of Inwood Forest Assocs., Ltd.,* 808 F.2d 363, 373–74 (5th Cir.1987) *(en banc),* aff'd sub nom United Sav. Assoc. v. Timbers of Inwood Forest Assocs., Ltd., —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Chinichian,* 784 F.2d 1440, 1442–43 (9th Cir.1986), or from specific bankruptcy code sections such as 11 U.S.C. § 1112 (allowing for conversion or dismissal after confirmation), § 1127 (allowing for plan modification after confirmation), § 1142 (allowing for plan enforcement post-confirmation), and § 1144 (allowing for revocation of confirmation), there exists a residue, albeit limited, of court authority over a confirmed chapter 11 case. *See, e.g., Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228 (4th Cir.1987) (jurisdiction retained under § 1127); *In re Harlow Properties, Inc.,* 56 B.R. 794 (B.A.P. 9th Cir.1985) (creditors may obtain specific performance against debtor pursuant to § 1142).

### B.

■ The utilization of Bankr.Rule 2004 post-confirmation must be considered in the context of this limited court jurisdiction. The primary purpose of a 2004 examination "is to permit the trustee to quickly ascertain the extent and location of the estate's assets." *Matter of Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill.1985). As the Supreme Court noted in discussing former § 21(a) of the Bankruptcy Act, from which former Bank.Rule 205 and current Rule 2004 are, in part, derived: [3]

The object of the examination of the bankrupts and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved.

*Cameron v. United States,* 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914). *Accord In re GHR Energy Corp.,* 35 B.R. 534 (Bankr.D.Mass.1983).

The current permitted scope of the 2004 examination, set forth in Rule 2004(b),[4] supports both this view as well as the notion that a 2004 examination is generally a pre-confirmation discovery tool. Nonetheless, the broad language of Rule 2004(b), referring to "any matter which may affect the administration of the debtor's estate," the "source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan," and "any other matter relevant to the case" allows, in a narrow context, the use of Rule 2004 post-confirmation. The examination, though, must be limited to issues which the court, at that time, still has the power to entertain. That is, it is restricted to the administration of the case post-confirmation. The binding effect of confirmation upon debtors and creditors alike under 11 U.S.C. § 1141 *(see, e.g., In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987); *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983)) makes the primary purpose of a 2004 examination inapplicable. Yet, the use of such a discovery tool to obtain information relevant to the continued administration of the case post-confirmation, such as a possible motion under §§ 1112, 1127, 1142 or 1144,

---

3. *See, e.g., In re Silverman,* 36 B.R. 254, 257 n. 5 (Bankr.S.D.N.Y.1984); 12 *Collier on Bankruptcy* ¶ 205.02, at 2–79 (14th ed. 1978).

4. Rule 2004(b) states:
   (b) Scope of Examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In an individual's debt adjustment case under chapter 13 or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

is supportable, if so limited. *See In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988) (post-confirmation 2004 examination of the debtor had been ordered to determine whether the debtor had achieved a significant post-confirmation income increase justifying plan modification under 11 U.S.C. § 1329(a)).

The decision of *In re Good Hope Refineries, Inc.*, 9 B.R. 421 (Bankr.D.Mass.1981) is not to the contrary. Although the court quashed a subpoena issued in connection with the debtor's desire to examine a third party under Rule 2004 post-confirmation, it did so largely because it viewed the subject of the dispute as outside the appropriate scope of the court's concern. In that respect, this decision comports with others that have denied the requested examination because any information obtained would not affect the administration of the bankruptcy case. *E.g., In re Continental Forge Co.*, 73 B.R. 1005, 1007 (Bankr.W.D. Pa.1987):

> The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper.

*Accord Matter of Wilcher* (*res judicata* barred matters sought to be discovered); *In re Silverman* (same). *See also In re GHR Energy Corp.*, 35 B.R. at 534 (examination of third parties limited to "those having knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy").

### III.

■ Whether a 2004 examination of the individuals listed in the instant matter will produce any information germane to the continued administration of this case becomes the critical question. The Union and the Fund suggest, in their memorandum, at 3, that:

> Applicants seek to examine the Respondents, all of whom either played a

role in the transactions at issue or who may have information with respect thereto, in order to learn exactly what transactions occurred, what agreements were entered into, when they occurred, and who was involved. Upon learning more about the the underlying facts so that a well informed decision can be made, Applicants intend to seek appropriate relief from the Bankruptcy Court, such as an order converting or dismissing the case, modifying the Plan, enforcing the Plan and Purchase Agreement, or seeking new management.

■ To a very large extent, the information sought by the applicants is connected to whether there was a knowing failure to adequately disclose the full nature of the asset purchase agreement prior to confirmation. While I acknowledge the seriousness of the accusations, along with the objectors' heated denials, that matter is now time-barred in this court. Whether it may be raised in a non-bankruptcy forum I need not decide. *See Matter of Newport Harbor Associates*, 589 F.2d at 24. It is easy to conclude, however, that whatever counsel to Since 1914, Inc. or debtor's counsel knew, and when they knew it, cannot be uncovered by a post-confirmation 2004 examination requested beyond the limitations period of § 1144.

■ Similarly, applicants' suggestion that they might utilize the information to be obtained by the examination in filing a motion to modify the debtor's chapter 11 plan ignores the plain meaning of § 1127(b). Unlike § 1329(a), which now allows unsecured creditors to seek modifications of a chapter 13 plan post-confirmation, *see In re Gronski*, § 1127(b) is limited by its terms to only a plan proponent or the debtor requesting modification. Here, the debtor was the plan proponent, and thus creditors are precluded from seeking a plan modification.[5] In these circumstances, a 2004 examination is improper.

---

5. *Goodman v. Phillip R. Curtis Enterprises, Inc.*, cited by applicants, involved a confirmed plan proposed by creditors, and so is inapposite. If the applicants believe that a sale of 90% of the Since 1914, Inc. stock represents an unautho-

rized plan modification by the debtor they are free to raise that point through some contested matter. The facts germane to that issue are known and would not necessitate a 2004 examination.

Certainly, the applicants have standing to seek compliance with the terms of the confirmed plan or to have the case dismissed or converted to chapter 7 pursuant to § 11 U.S.C. § 1112(b)(7), (8). *Matter of Coral Air, Inc.* Insofar as a motion to dismiss or convert is concerned, I agree with the objectors that the broad examination request made by the applicants is inappropriate. The debtor acknowledges that Since 1914, Inc. has not tendered the payments due under the purchase agreement and the debtor in turn has not tendered its requisite plan payments to creditors. Information regarding the nature of the stock sale to Mr. Santillo and when the sale was contemplated will not advance the creditors' position under § 1112. Thus, an examination on these points is not required.

The final point argued by the Union and the Fund has the most merit.[6] Whether a debtor has acted in conformity with the "terms, provisions, interest, and purpose" of the confirmed plan is a legitimate post-confirmation inquiry. *In re Pittsburgh Terminal Coal Corp.*, 183 F.2d at 523. To the extent the debtor, by actions of its principals, has sought to evade the terms of the plan, such actions may be challenged by creditors. *Id.; Matter of Coral Air, Inc.* The applicants are correct in noting both that no action has been undertaken by the debtor to enforce its rights under the asset purchase agreement and that 11 U.S.C. § 1142 gives the court the power to enforce debtor compliance with plan terms, *see In re Harlow Properties, Inc.*, and to prevent third parties from interfering with the consummation of the plan. *See In re Pittsburgh Terminal Coal Corp.*

Before the applicants give up on this plan, they have the right to decide whether it can be salvaged and should have the opportunity to obtain relevant information from knowledgeable employees of the debt-or and the buyer. *Cf. In re Diversified Capital Corp.*, 89 B.R. 826 (Bankr.C.D.Cal. 1988) (failure of debtor to move to set aside a transfer justified appointment of creditors' committee post-confirmation); *In re Northampton Corp.*, 37 B.R. 110, 115 (Bankr.E.D.Pa.1984), *aff'd*, 59 B.R. 963 (E.D.Pa.1984) (limiting discovery regarding a motion to dismiss). As third parties as well as the debtor can be examined under Rule 2004, *see Chereton v. United States*, 286 F.2d 409 (6th Cir.1961), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961); *In re Continental Forge Co.*, I will grant the application insofar as it seeks to examine principals of the debtor and Since 1914, Inc. and is limited in scope to the enforcement of the asset purchase agreement and the debtor's ability to comply with the terms of the confirmed plan.

An appropriate order shall be entered.

---

**6.** The applicants also suggest, relying upon *In re F & S Central Manufacturing Corp.*, CV 87–1065, unpublished memorandum (E.D.N.Y. March 30, 1988) (Raggi, J.), that creditors may have a post-confirmation claim against Jolene, Inc. despite the disclaimer found in the disclosure statement, quoted above. Even if such a claim exists, and assuming that this court would have jurisdiction to hear it, a 2004 examination would be inappropriate. *See In re GHR Energy Corp.; In re Good Hope Refineries, Inc.* The discovery process in adversary proceedings should be utilized.