**In re H & L DEVELOPERS, INC., Debtor.**

**H & L DEVELOPERS, INC., Plaintiff,**

v.

**ARVIDA/JMB PARTNERS and Arvida Realty Sales, Ltd., Defendants.**

Bankruptcy No. 92–15847 DWS.
Adv. No. 94–0488.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 28, 1994.

Gary P. Lightman, Philadelphia, PA.

Andrew C. Kassner, Philadelphia, PA.

Joseph Minni, Philadelphia, PA.

### MEMORANDUM OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of Arvida/JMB Partners ("Partners") and Arvida Realty Sales ("Sales"), defendants in the above-captioned adversary proceeding (Partners and Sales are together referred to as "Movant") to Dismiss Complaint for Injunctive Relief and Damages or, in the alternative, Motion for Abstention (the "Motion").[1] Movant urges this Court to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Specifically Movant argues that the order confirming Debtor's plan of reorganization is *res judicata* and the doctrines of equitable and judicial estoppel compel dismissal where, as here Debtor's claim against Movant was not disclosed in its disclosure statement. In the alternative, Movant contends that abstention would be appropriate pursuant to 28 U.S.C. § 1334(c)(1).

Hearing on the Motion was held on August 29, 1994 at which time the parties presented argument and stipulated to the record consisting of the Motion and its Exhibits and Debtor's Response thereto, and the Motion was joined for decision. However, prior to decision being rendered, Debtor moved to reopen the record on the Motion which request was granted solely to allow Debtor to supplement the record as to Debtor's changed financial resources as they might bear on its ability to litigate in this jurisdiction versus the courts of Florida. The affidavit of Ronald Laessig, Debtor's principal was filed on November 7, 1994.

Because this Court will consider the Exhibits and Affidavit which are matters outside the Complaint, we will treat the Motion as one for summary judgment under Fed. R.Bankr.P. 7056 pursuant to Fed.R.Bankr.P. 7012(b).

### BACKGROUND

The Debtor is in the business of developing certain real estate known as Fairway One ("Fairway") within a community owned by Partners known as the River Hills Country Club ("River Hills"). In addition to purchasing Fairway, Debtor also entered into an Exclusive Agency Brokerage Agreement ("Brokerage Agreement") whereby it was to participate in Sales' overall marketing and sales program for River Hills. Exhibit C to Motion. The Debtor's rejection of the Brokerage Agreement was approved by the Court on March 8, 1993. Exhibit E to Motion.

On June 18, 1993 Debtor filed its Second Amended Plan of Reorganization (the "Plan") and Debtor's Disclosure Statement to Second Amended Plan. Exhibits G and H to Motion.

---

1. Some procedural history is necessary to understand what is and what is not at issue at this time. At a hearing held on June 20, 1994, in response to this Court's order to show cause why the Debtor's Chapter 11 case should not be closed, the Debtor advised the Court that it had just commenced an action against Movant seeking injunctive relief and money damages. Without prejudice to Movant's position that this Court lacks subject matter jurisdiction over the matters plead by Debtor, the parties then agreed to a Consent Order entered by this Court on July 19, 1994 which resolved all but one issue dealt with in the Complaint to the extent injunctive relief was sought. Subsequently the parties reached agreement on this open issue and a further Consent Order was entered on September 14, 1994. Thus, the only allegations at issue are contained in Counts I through IX of the Complaint for which the Debtor is seeking money damages only.

The Plan was confirmed by Order of this Court dated August 10, 1993, Exhibit I to Motion, and provides, *inter alia,* for a distribution to non-insider unsecured creditors of 95% of their allowed claims in four annual installments commencing on the first anniversary of the Effective Date of the Plan.[2] The reorganized debtor also has certain payment obligations on various dates to Sun Bank, its mortgagee, in consideration for which the reorganized debtor will secure release of the lien on lots to be sold. The Plan does not limit the funding source to be utilized by the reorganized debtor in making these payments although the Disclosure Statement contemplates that creditors will be paid from proceeds of lot sales and states that sufficient funds will be available based on projected lot sales of Fairway. Exhibit G to Motion at 11, 16 and 18.

The Complaint alleges false and misleading representations made by Movant to induce Debtor to purchase Fairway in November 1988 as well as certain wrongful conduct commencing in 1988 and continuing post-confirmation (and presumably to the time of the Consent Order) which has impeded Debtor's sales efforts of Fairway. Count I alleges breach of the Brokerage Agreement, Count II alleges breach of duty of good faith and fair dealing in connection with the Brokerage Agreement, Count III alleges fraud and misrepresentation in connection with the sales of Fairway, Count IV alleges tortious interference with prospective business advantage, Count V alleges tortious interference with contractual relations, Count VI alleges conspiracy to direct business away from Debtor, Count VII alleges defamation, Count VIII alleges restraint of trade, Count IX alleges anti-competitive tying in connection with the Brokerage Agreement and Count X seeks injunctive relief. The Complaint seeks compensatory damages in excess of $3 million as to all Counts, punitive damages in excess of $10 million as to Counts II through IX and treble damages as to Count IX.

The Disclosure Statement identifies Sales' inability or unwillingness to obtain customers for Fairway as the cause of its cash flow problem which resulted in Sun Bank's foreclosure proceedings and its bankruptcy filing. Exhibit G to Motion at 10. There is no mention, however, of any claim of the Debtor against Partners or Sales. In the Plan, the Debtor expressly reserves its rights to "investigate and prosecute any potential claims of the Estate against any party, including, but not limited to, claims for preferential and/or fraudulent transfers under Sections 547 and 548 of the Code." Section 11.3 headed "Preferential and Fraudulent Transfers" of Exhibit F to Motion. The Disclosure Statement is less broad and states that Debtor reserves the right to initiate or continue any litigation to recover any voidable and/or fraudulent transfer. Exhibit G to Motion at 20. There is no reservation in either the Plan or Disclosure Statement of the right to initiate litigation against Movant.

## DISCUSSION

Our analysis of the Motion requires us to bifurcate the allegations of the Complaint into conduct that allegedly occurred pre-confirmation and that which allegedly occurred post-confirmation since they present two different issues for this Court.

### A.

*Pre-confirmation conduct.* Debtor acknowledges that the allegations contained in Counts I, II, III and IX relate to pre-confirmation conduct exclusively. Counts IV through VIII deal with events commencing pre-confirmation but allegedly continuing post-confirmation. To the extent the actions occurred pre-confirmation, Movant contends that the doctrines of res judicata and estoppel apply. Movant urges us to find that the Third Circuit Court of Appeals' decision in *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) is determinative of our ruling with respect to the pre-confirmation conduct.

In *Oneida,* the debtor commenced a post-confirmation action against its lender alleging, *inter alia,* breach of contract and mis-

---

2. The Effective Date is defined in the Plan as the first Business Day three months after the Confirmation Date. The first installment to non-insider unsecured creditors was due in mid-November 1994.

representation for conduct that occurred prior to the bankruptcy filing. None of these claims had been disclosed in the debtor's bankruptcy schedules, plan or disclosure statement. The Third Circuit Court of Appeals recognized that candid disclosure is the pivotal concept in a reorganization case, noting the requirements for disclosure contained in § 521 relating to schedules of assets and liabilities and § 1125 relating to the disclosure statement. The importance of disclosure is underscored by the reliance the court and creditors place on the disclosure statement in determining their response to the debtor's plan. A strong interest also exists in bankruptcy reorganizations to achieve finality. The court observed that

> [t]his goal of finality was supported by the Supreme Court in *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), holding that confirmation of a plan acts to bar attempts by the parties to relitigate any of the matters that could have been raised during the bankruptcy proceedings (citations omitted).

*Id.* at 417. Citing prior case law, the court stated that the result of a debtor's failure to disclose any litigation likely to occur in a non-bankruptcy context is the application of equitable estoppel against a subsequent attempt to prosecute the actions. *Id.*

■ We agree that equitable estoppel is the appropriate principal to bar litigation of the pre-confirmation conduct at this time.[3] As in *Oneida*, disclosure was not only important to Movant as an adversary and as a creditor[4] but to the other creditors and the bankruptcy court. Conceivably had the unsecured creditors known of a potential asset worth $3 million, they might not have voted to accept a plan that paid 95% over time without interest. And it is clear that there would be no way for creditors or the Court to know of this claim. The Amended Schedules, Exhibit B to Motion, disclose Movant's disputed claim but reveal no affirmative claim of Debtor against Movant. Both iterations of Debtor's Plan make no statement about the claim and while reserving the right to bring post-confirmation preference and other avoidance actions, do not reserve the right to sue Movant. The Disclosure Statement, while disclosing the Debtor's view that Sales' failure to sell units contributed to Debtor's inability to service its debt and the consequential foreclosure proceedings, is silent about the potential of a substantial claim arising from that and other actions taken by Movant.

Presumably recognizing the flaw in its disclosure and therefore the vulnerability of its legal position, Debtor filed a Third Amended Disclosure Statement and Plan on October 3, 1994 which disclosed the claims against Movant and provided that the distribution to unsecured creditors would increase to 100% to the extent a recovery from Movant was sufficient. While this amendment contained sufficient information to provide creditors with notice of this asset, it was too little too late. As we noted in a companion Opinion and Order, further modification of the Debtor's plan of reorganization is not possible because the confirmed plan has been substantially consummated. 11 U.S.C. §§ 1127(b) and 1101(2).

As in *Oneida*, we conclude that the reorganization plan presented to creditors, lacking disclosure of the potential for recovery

---

**3.** Other courts have applied the principal of equitable estoppel in similar cases. *See, e.g., In re Hoffman*, 99 B.R. 929 (N.D.Iowa 1989); *In re Little*, 126 B.R. 861, 866 (Bankr.N.D.Miss.1991). Debtor notes that these cases share a common denominator, i.e., the defendant is a lender and would have the court limit the application of this doctrine to lenders which, of course, Movant is not. We find no basis to do so.

**4.** Debtor had scheduled Movant's claim as disputed. The parties appeared to agree that Movant did not file a proof of claim and Movant received no distribution under Debtor's plan. Movant states that in reliance on Debtor's failure to assert a claim against them, they did not file a proof of claim or participate in the plan process. While there is nothing in this record that supports Movant's claim of reliance, it is not unusual for a party seeking to avoid jurisdiction of this court to forebear from filing a claim which would be deemed to be consent to the equitable jurisdiction of this court. *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Travellers International A.G. v. Robinson*, 982 F.2d 96 (3d Cir.1992). Presumably if an affirmative action was asserted against Movant in the bankruptcy case, there would have been no reason for Movant to waive its claim.

against Movant, was "informationally deficient", and failed to alert creditors to the potential benefits available to them upon the successful prosecution of the claims. Accordingly, "in order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding the finality of plans which they have voted to approve", we hold that Debtor's failure to disclose its claim against Movant for pre-confirmation conduct precludes it from litigating the causes of action at this time.[5] *Id.* at 418. As a result, Movant's motion to dismiss all counts based on pre-confirmation conduct is granted.

### B.

*Post-confirmation conduct.* The remaining counts deal with post-confirmation conduct and Movant contends we do not have subject matter jurisdiction over this part of the Complaint. In the alternative, if we determine that we do have jurisdiction, Movant urges us to abstain in favor of the state court in Florida. We begin with an examination of our jurisdiction.

The burden of proving the existence of jurisdiction over the remaining counts of the Complaint falls to the Debtor who as plaintiff seeks redress in this Court. *In re Almarc Corp.,* 94 B.R. 361, 363 (Bankr. E.D.Pa.1988) (relying on *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805 (3d Cir.1981)). Debtor looks to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (C), (E), and (*O*)

as the jurisdictional authority for its action. Complaint ¶ 4 and 5.[6]

The Third Circuit Court of Appeals in *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261 (3d Cir.1991), analyzing the bankruptcy court's jurisdiction under § 1334(b), stated:

> It is well-settled that the bankruptcy court potentially has jurisdiction over four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.

*Id.* at 264 (citations omitted). In examining these three categories, the Court of Appeals stated that

> [i]t is not necessary, ... to fit the proceeding into one of these particular categories since "they operate conjunctively to define the scope of jurisdiction." ... Hence, we need only determine "whether a matter is at least 'related to' the bankruptcy."

*Id.* (citations omitted). A proceeding is related to the bankruptcy if *"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."* *Marcus Hook,* 943 F.2d at 264 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original)). Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and ad-

---

**5.** Debtor argues that this case is distinguishable from *Oneida* because Movant's claim was not litigated in the bankruptcy. In *Oneida,* there was litigation involving the extent and validity of the Bank's lien. We note that for the purpose of applying the doctrine of equitable estoppel, this is a distinction without a difference.

**6.** Debtor also makes a half-hearted effort to suggest, in response to Movant's argument that neither the Confirmed Plan or Confirmation Order provide for the retention of jurisdiction, that Paragraph 8.1(e) of the Confirmed Plan does provide for the retention of jurisdiction to "determine such other matters and for such other purposes as may be provided in the confirmation order or otherwise deemed appropriate to accomplish its intents and purposes." It is undisputed that the Confirmed Plan never expressly reserved the right to pursue a claim against Movant. In the first place, the Confirmation

Order in this case expressly stated that "this court will retain subject matter jurisdiction of post-confirmation disputes only to the extent allowed by federal bankruptcy law, any language in the confirmed plan notwithstanding." Accordingly the plan provisions are not relevant to this inquiry. Moreover, it is a fundamental proposition that parties cannot confer subject matter jurisdiction by agreement. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). In short, plan provisions regarding post-confirmation jurisdiction, were they found to exist in this case, would not be enforceable. *See, e.g., Walnut Associates v. Saidel,* 164 B.R. 487, 494–95 (E.D.Pa.1994); *Grimes v. Graue (In re Haws),* 158 B.R. 965, 969 (Bankr. S.D.Tex.1993); *In re Almarc Corp.,* 94 B.R. at 365.

ministration of the bankruptcy estate." *Marcus Hook*, 943 F.2d at 264 (quoting *In re Smith*, 866 F.2d 576, 580 (3d Cir.1989)).

■ It is generally recognized that "although the jurisdiction of the bankruptcy court continues until the Chapter 11 case is closed, once a plan has been confirmed, the court's jurisdiction begins to weaken." *Walnut Associates v. Saidel*, 164 B.R. 487, 491 (E.D.Pa.1994). As has been noted by my colleague the Honorable Bruce I. Fox and repeated in decisions in this and other districts:

> [C]ourts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree (*see* Bankr.R. 3020) and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility.'

*In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373, 376 (Bankr.E.D.Pa.1988) (citing *North American Car Corp. v. Peerless Weighing & Vending Machine Corp.*, 143 F.2d 938, 940 (2d Cir.1944)).

■ The Bankruptcy Code specifically identifies certain areas where the competing interests are to be resolved in favor of retaining jurisdiction. Section 1142 authorizes the bankruptcy court to enter orders "necessary for the consummation of the plan". That section along with § 105 have been the basis of orders construing and enforcing terms of a confirmed plan. Courts have long held that a bankruptcy court retains jurisdiction after confirmation

> to protect its [confirmation] decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation.

*In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d 922, 924 (2d Cir.1966). *Accord, e.g., In re Pittsburgh Terminal Coal Corp.*, 183 F.2d 520 (3d Cir.), *cert. denied*, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950); *Pennsylvania Companies, Inc. v. Stone (In re Greenley Energy Holdings of Pennsylvania, Inc.)*,

110 B.R. 173 (Bankr.E.D.Pa.1990); *Cinderella Clothing Industries*. However, the authority conferred by § 1142 is at all times limited by the § 1334 requirement that the outcome of the dispute conceivably affect the implementation of the plan. *See Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Products, Inc.)*, 152 B.R. 927, 931–32 (Bankr. N.D.Ill.), *aff'd*, 158 B.R. 459 (N.E.Ill.1993), *aff'd*, 23 F.3d 159 (7th Cir.1994); *Greenley Energy*, 110 B.R. at 184.

■ In support of this Court's jurisdiction, Debtor states that Movant's alleged interference with the operation of Debtor's business subsequent to confirmation "constitute interference with the execution of the plan" because the revenues from the business, i.e., lot sales, are the source of the plan funding. Accepting this argument would lead to the retention of jurisdiction over any dispute in which the plaintiff is a reorganized debtor in the midst of performing a reorganization plan which provides for the payment of creditors over time from post-confirmation income. We do not think that is what Congress intended when it allowed this court to retain jurisdiction over post-confirmation disputes that could conceivably affect the implementation of the plan. Indeed such an interpretation seems directly at odds with the goal of weaning the debtor from dependence on the bankruptcy court in order to stand on its own feet with respect to post-confirmation matters. *See Greenley Energy*, 110 B.R. at 182; *In re Morgan & Morgan, Inc.*, 24 B.R. 518, 521 (Bankr.S.D.N.Y.1982).

■ The Complaint at issue raises state law claims and causes of action. It asserts no Bankruptcy Code or other federal law claims. It does not seek to interpret, implement or enforce the provisions of the Confirmed Plan or the Confirmation Order. Accordingly, we find that we have no subject matter jurisdiction over the remaining counts of the Complaint and we must therefore dismiss this adversary proceeding.[7]

---

7. Finding that dismissal is required for lack of subject matter jurisdiction, we need not decide Movant's motion to abstain pursuant to 28 U.S.C. § 1334(c)(1). We note, however, that the only element of mandatory abstention not implicated in this adversary proceeding is the absence of a pending state court action. Courts often look to the mandatory abstention provisions as a guide to determining whether to exercise discretionary abstention. If, as here, most of the elements of

Having determined that the adversary proceeding should be dismissed, it necessarily follows that there is no reason to keep this bankruptcy case open. Thus, what began by our routine order to show cause on May 4, 1994, why this case should not be closed is resolved and concluded by the foregoing rulings.

mandatory abstention are present, they are inclined to exercise discretionary abstention. *Clayter v. Clayter (In re Clayter),* 174 B.R. 134 (Bankr.D.Kan.1994). Applying the facts of this matter as stated above to the factors which determine the exercise of discretionary abstention, *see, e.g., Civic Center Cleaning Co., Inc. v. Reginella Corporation,* 140 B.R. 374, 375–76 (W.D.Pa. 1992), we believe would lead to the same result, i.e. the Debtor will have to find another forum for his extant claims against Movant.